UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
CHRISTINE BARNES,

                              *Plaintiff*,                    **Case No. 22-cv-0175**

     -against-                                               **COMPLAINT**

MERRICK B. GARLAND, ATTORNEY GENERAL,.        <u>**JURY TRIAL DEMAND**</u>
U.S. DEPARTMENT OF JUSTICE, DRUG
ENFORCEMENT ADMINISTRATION

                              *Defendants*.
-----------------------------------------------------------X

  Plaintiff, Christine Barnes ("Plaintiff"), by and through her attorneys, Ballon Stoll, P.C.,

complaining of Defendants, Attorney General Merrick B. Garland, United States Department of

Justice, Drug Enforcement Administration (collectively, "Defendants"), alleges upon personal

knowledge, unless where information and belief is stated, the following:

  1. This is an action brought for substantial compensatory damages and reasonable

counsel fees premised upon the Defendants' continuing acts of unlawful discrimination,

harassment, and retaliation based on Plaintiff's national origin, and gender, in violation of the Title

VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 *et seq*.; and the Executive Law of the State of

New York, New York State Human Rights Law ("Executive Law") § 296, *et seq.*

<u>**JURISDICTION AND VENUE**</u>

  2. This court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C.

§1331 and 42 U.S.C. §§ 2000-e5(f)(1),5(f)(3) and supplemental jurisdiction over the State and

City law claims pursuant to 28 U.S.C. § 1367.

  3. As the Southern District is the district where a substantial part of the events giving

rise to the claims occurred, venue is proper within this district pursuant to 28 U.S.C. § 1391 (a)(2).

4.     Plaintiff filed a charge with the EEOC against Defendants on July 17, 2019, complaining of discrimination on the basis of national origin, as alleged in this complaint.

5.     On or about October 12, 2021, the Plaintiff obtained notification of her right to file a civil action in the United States District Court.

## THE PARTIES

*Plaintiff*

6.     Plaintiff is a "person" within the meaning of Executive Law § 292(1), and within the meaning of New York City Administrative Code § 8-102(1).

7.      Plaintiff resides in the County of Richmond, State of New York.

*Defendants*

8.     Defendants United States Department of Justice, Drug Enforcement Agency (the "DEA") is a municipal corporation existing by virtue of the laws of the United States of America.

9.     Defendants Merrick B. Garland ("Garland") is the present United States Attorney General. (Garland and the DEA are referred to herein as the "Defendants.")

10.     Defendants DEA is an employer within the meaning of Executive Law § 292(5). Upon information and belief, the DEA employs approximately 10,000 employees, including agents, throughout the United States.

## JURY DEMAND

11.      Plaintiff hereby demands a trial by jury in this action.

## FACTS

12.     Plaintiff, a female, who self-identifies as Hispanic, began working for the DEA in 2009 as an Intern, as a clerk typist.

13.     On or about February 18, 2011, Plaintiff received an "On the Spot" award signed by Special Agent in charge, Harry S. Sommers for her positive performance as an Intern.

14.     In 2015, Plaintiff applied for the DEA Diversion Investigator position. At the time, Plaintiff learned that the promotion date would be the date of hire.

15.     In or about July 10, 2017, Plaintiff learned that DEA implemented a new policy in the "Career Progression Manual for Diversion Investigators" by which the date of hire would be the date of graduation from the DEA Academy which pushed forward her promotion by three months.

16.     In September 2017, Plaintiff was offered the Diversion Investigator position, while she was employed at the FBI, and notified the DEA Human Resources she needed to attend the upcoming DEA Academy Class #29, because otherwise, the FBI would transfer her to another state, and where she would be required to complete at least one year of employment with the FBI. The DEA, then offered Plaintiff to only choose between the DEA's Albany branch or the Newark branch, neither of which were Plaintiff's preferred choice of placement. However, other candidates submitted preference forms, and received positions in the branches from their preference forms, unlike the Plaintiff. Those candidates were Caucasians.

17.     In January 2018, Plaintiff graduated from the DEA Academy within the top four (4) out of forty-eight (48) graduates.

18.     Plaintiff was hired as DEA Diversion Investigator in January 2019 at the Albany branch and her immediate supervisor was Acting Group Supervisor Larry Martin ("A-GS Martin"), a male Caucasian.

19.     In 2018, Plaintiff approached and complained to A-GS Martin about Diversion Investigator Nicole DiBella ("DI DiBella") who is a female Caucasian, for omitting the Plaintiff

from work conversations, team activities and meetings and creating a hostile work environment for the Plaintiff. Plaintiff requested a meeting from A-GS Martin to resolve the conflict, but A-GS Martin denied Plaintiff's request.

20.     In or about October 16, 2018, Plaintiff filed a complaint identifying hostile work environment created by A-GS Martin and DI DiBella to Assistant Special Agent in Charge, David Zon "ASAC Zon," a male Caucasian, who is a senior management agent in the DEA, Albany branch.

21.     In or about October 22, 2018, a Diversion Program Manager Susan Baker ("DPM Baker") a female, African American, scheduled a meeting to address the work environment complaint, and on the same day, ASAC Zon approved a desk separation for the Plaintiff and DI DiBella.

22.     In or about November 2018, Plaintiff conducted a Task Force meeting regarding a confidential informant on a case that Plaintiff was assigned to work on. In the middle of the meeting, DI DiBella busted into the meeting office, and Plaintiff was taken out from the meeting room. DI DiBella interrupted Plaintiff's briefing and took over the meeting room, with the confidential informant present because she was seeking to utilize the confidential informant for one of her assignments.

23.     DI DiBella's conduct, as set forth in the preceding paragraph, was not admonished by Defendants. Based on the DEA's practice, DIs have a private conversation concerning safety and security, and discuss the confliction that may arise when using the same confidential informant for more than one case.

24.     On or about January 6, 2019, Group Supervisor Luke Settles ("GS Settles"), a male who self-identifies as multi-racial, was appointed to replace A-GS Martin and became Plaintiff's immediate supervisor at the DEA's Albany branch.

25.     On or about January 23, 2019, Plaintiff received a phone call from the confidential informant who expressed safety concerns regarding DI DiBella. Plaintiff recommended that the confidential informant contact his handler, Task Force officer Joel Walbridge ("TFO Walbridge"). In addition, Plaintiff notified the TFO Walbridge, about the informant's complaint.

26.     On or about February 2019, Plaintiff could not find a work binder and emailed other DIs, except for DI DiBella, because she wasn't in the office. Eventually the binder was found. However, on or about February 21, 2019, DI DiBella complained to GS Settles that Plaintiff allegedly lost a work binder and did not include DI DiBella in the search for the binder.

27.     On or about February 22, 2019, Plaintiff notified GS Settles about the confidential informant's complaint against DI DiBella and advised him to speak with TFO Walbridge about the informant's complaint.

28.     On or about February 25, 2019, Plaintiff coordinated with the management to include overseas partners, including an investigator, Charles Fischer, a male Caucasian, from the Saratoga Police Department, to present a criminal, counterfeit drug overseas case ("counterfeit case") to GS Settles during a meeting. GS Settles removed the Plaintiff from the counterfeit case that she was initially working on and prepared materials for and the case was assigned to Special Agent Tom Vaugn "SA Vaugn," male Caucasian, after Plaintiff's presentation at the meeting. Case reassignment was not a standard practice at the DEA, unless in special circumstances, where the DI can no longer work on the case. By reassigning the case, GS Settles prevented the Plaintiff from completing her assignment that would reflect the quality of her work, thereby creating a hostile

5

work environment. Based on knowledge, other non-Hispanic DIs did not have their cases reassigned to other employees.

29.     On or about February 26, 2019, TFO Walbridge verbally notified the Plaintiff that DI DiBella became a person of concern due to the confidential informant's complaint. TFO Walbridge also confirmed that no negative actions or concerns were reported for the Plaintiff.

30.     On or about February 27, 2019, GS Settles accused Plaintiff of violating Diversion Manual Section 5211.2 regarding the confidential informant. Plaintiff received a sanctioning memo to her file. No prior investigations regarding Plaintiff's involvement in or cause of confidential informant's complaint were conducted.

31.     Plaintiff did not violate Diversion Manual Section 5211.2 regarding the confidential informant.

32.     On or about March 5, 2019, GS Settles conducted a meeting with the Plaintiff. GS Settles notified the Plaintiff that DPM Baker and Group Supervisor William Schohn ("GS Schohn"), a male Caucasian, decided to reassign the overseas case due to Plaintiff's purported time management issues. Based on knowledge, DPM Baker and GS Schohn do not review DIs time management. During the meeting, Plaintiff was also notified that she can no longer apply for overtime pay[ and there were no reasons proffered for such decision.

33.     On or about April 8, 2019, Investigator Charles Fischer and Sergeant Timothy Sicko from the Saratoga Police Department, Investigations Division, sent a praise and acknowledgement letter to the Plaintiff, acknowledging her hard work and performance at building both the overseas case and for her ability to coordinate all the appropriate agencies during the investigation. The Saratoga Police Department further noted that the Plaintiff will further be "a point of contact in the diversion world." Plaintiff forwarded the letter to GS Settles and requesting

for it to be included in her file and 2019 fiscal year evaluation report. On or about September 12, 2019, the Plaintiff reforwarded the praise and acknowledgement letter to GS Settles with the same request.

34.     On or about April 2018, Plaintiff was working on a case involving a doctor ("doctor criminal case") and made a presentation about it to GS Settles. DI DiBella was working a different doctor criminal case during the same time frame.

35.     On or about March 14th, 2019, GS Schohn didn't allow Plaintiff to utilize his group assistant (secretary) to redact reports for the case that was housed by GS Schohn's group at the time. However, on or about April 25th, 2019, GS Schohn allowed his male, Caucasian employee - Task Force officer Herb Hall ("TFO Hall") to receive assistance from a contractor outside his group. As a result, TFO Hall received preferential treatment in a form of additional resources for completing work tasks, unlike the Plaintiff.

36.     On or about March 19, 2019, GS Settles scheduled an Employee Assistance Program "EAP" meeting with Plaintiff and DI DiBella allegedly to resolve/mediate a "cat fight". GS Settles was aware that during that date, Plaintiff was on annual leave and therefore did not attend the meeting.

37.     On or about March 29, 2019, the Plaintiff reviewed and returned a 2018-2019 interim evaluation report, where Plaintiff made detailed notes of reasons for her disagreement  with the evaluation conducted by A-GS Martin which resulted in a poor evaluation report.

38.     On or about August 12, 2019, DI DiBella received resources and returned to work on her doctor criminal case. Plaintiff was not permitted to work on her separate, doctor criminal case. Plaintiff was further not permitted to assist on the case either and thereby was removed from the case altogether.

39.     On or about April 4, 2019, GS Settles held a meeting with DI Jeffrey Sousa ("DI Sousa"), a male Caucasian, and the Plaintiff where he expressed his dissatisfaction with Plaintiff's Report of Investigation. DI Sousa was dissatisfied, despite the fact that supervisor recommendations/critique of DI's report filings are often done in private or in writing, not in front of another DI.

40.     On or about April 9, 2019, GS Settles conducted a mid-year review evaluation of the Plaintiff. GS Settles accused the Plaintiff of not performing collateral duties, as expected to be performed in the daily workload (Secondary Custodian for National Drug Take Back Program, Alternate Property Custodian, Diversion Duty Agent, and Building Duty Agent), as reported by another employee. Despite Plaintiff's request to confront the accuser, GS Settles refused to notify the Plaintiff who the accuser was, ordered the Plaintiff to return to her desk, and not send any emails about this. On or about April 25, 2019, GS Settles acknowledged that Plaintiff is already completing the bulk of the work for the team, and even reassigned one of her assignments to another DI, thereby contradicting his earlier accusation that Plaintiff is underperforming and not completing collateral duties.

41.     On or about April 9, 2019, Plaintiff filed an Equal Opportunity Employment complaint.

42.     On or about April 9, 2019, Plaintiff emailed to GS Settles, seeking to review a grievance policy regarding evaluations. On or about April 13, 2019, Plaintiff wrote a follow-up to her request. GS Settles never provided the copy of the policy.

43.     On or about May 14, 2019, Plaintiff and DI Sousa were assigned to assist the inspection team that included DI DiBella in drug count and complete inspection notes. On or about May 16, 2019, due to the heavy workload, GS Settles required Plaintiff and DI Sousa to work

overtime, but without pay. After an 8-hour work shift, Plaintiff and DI Sousa requested to leave work for the day.

44.     On numerous occasions on or about May 14-16, 2019, Plaintiff and other employees witnessed GS Settles and DI DiBella involved in, upon information and belief, a non-employer-employee relationship, having breakfast together.

45.     On or about July 1, 2019, GS Settles emailed Plaintiff to notify that doctor-criminal case is being reassigned to DI Cristina Russo ("DI Russo"), a female Caucasian, from the TDS group.

46.     On or about July 2, 2019, second EAP meeting was held which included GS Settles, DI DiBella, DI Sousa, and Plaintiff. At the meeting, EAP refused to interview other persons with knowledge, and consequently accepted no witnesses. EEO investigator, Taya Austin ("EEO Austin"), a female African American, was the one assigned to handle Plaintiff's complaint, but she was also handling DI Sosa's complaint, a potential conflict of interest. At the meeting, EEO Austin recommended that Plaintiff only "to focus on yourself" and "pay attention to the opportunities received by DI DiBella".

47.     On or about June 3, 2019, GS Settles accused Plaintiff of tardiness and required her to resubmit her work hours to show that she was 30-minutes late. Plaintiff was allowed to start the work shift late per the order of ASAC Zon who assigned Plaintiff to building diversion duty. GS Settles was corrected by Plaintiff and DI Sousa, who was a witness. However, GS Settles did not correct himself nor the record in anyway, and never apologized.

48.     On or about July 3, 2019, Plaintiff served GS Settles with a memo which advised him that under Title VII, 42 USC 2000-e, Plaintiff's removal from doctor criminal case was an

unlawful act of retaliation and federal law protects employees from employer acts of retaliation against employees associated with internal or external complaints.

49.     On or about July 7, 2019, DI Sean Callahan ("DI Callahan"), a male Caucasian, notified Plaintiff that he was allowed to work on doctor-criminal investigations while being a junior-level employee. At the time Plaintiff held a more senior position than DI Callahan but was not permitted to work on these cases. On July 15, 2020, New York division, DI Jonathan Rivera, a male Hispanic, who graduated with Plaintiff from the same class, admitted in an instant message that he is working on a doctor-criminal investigation.

50.     On or about July 17, 2019, Plaintiff filed a formal complaint of discrimination, alleging discrimination based on race, gender and national origin to the Equal Employment Opportunity of DEA.

51.     On or about August 8, 2019, GS Settles notified personnel that diversion personnel will be moving their desks to the pen register room. In October 2019, upon construction of four new cubicles in the room, only DI Sousa and the Plaintiff were moved to the pen register room, and thereby isolated from the rest of the personnel.

52.     In or about August 8, 2019, the same day after Plaintiff and DI Sousa moved to the pen register room, GS Settles made a comment to DI Sousa that he will "take a pool stick, snap it, and throw it into the room and we [Diversion personnel] can sort out our problems."

53.     On or about August 15, 2019, an ADR-Mediation was conducted at the Albany FBI Building. Plaintiff's attorney asked about the relationship status between GS Settles and DI DiBella, the DEA attorney refused to respond, stating that the information is irrelevant.

54.     Following the ADR-Mediation, on or about August 16, 2019, DI DiBella was moved to the Tactical Diversion Squad. No modifications nor accommodations were made regarding the Plaintiff following the meeting.

55.     On or about September 4, 2019, a third EAP meeting was conducted. EEO Austin discouraged filing complaints further recommended the Plaintiff to "focus on yourself".

56.     On or about September 23, 2019, Plaintiff filed a request to amend her EEO complained initially filed on July 17, 2019, to include information that EEO Austin sided with the employer and discouraged the Plaintiff from filing a complaint.

57.     On or about September 23, 2019, DPM Baker denied Plaintiff funding to attend training conducted by the National Association of Drug Diversion Investigators, specifically for Diversion Investigators such as the Plaintiff. DPM Baker alleged that no funding was being allocated to DIs for attending this training. However, DI Jennifer Heneghan ("DI Heneghan"), a female Caucasian, from the New York branch and DI Juana Hill, a female African American, informed Plaintiff that they attended the training and were allocated funding to attend. Thus, other non-Hispanic female employees received preferential treatment, in a form of funding to attend training, unlike the Plaintiff.

58.     On or about September 24, 2019, GS Settles issued a memo interpreting the Agent's Manual (the "Manual"), and claiming that the Manual's requirement to prepare a report within ten days of investigative activity actually meant that the report has to be completed in ten days. Upon information and belief, by rephrasing the Manual's rule GS Settles used it as basis for issuing a reprimand memo to Plaintiff.

59.     On or about September 24, 2019, GS Settles issued a reprimand memo to Plaintiff, alleging that she was "not being a team player," has "poor performance" at work, and was punished

for expressing opinions during open forum discussions. The poor performance rating was based on the GS Settles' earlier established rule. (para. 56).

60.     GS Settles enforced his rules towards the Plaintiff, while excusing other officers, such as DI DiBella, from following them. On or about July 29, 2019, GS Settles announced that DI DiBella completed her inspection report, despite the fact that the Closing Meeting was initiated on June 24, 2019, and the report was submitted on July 29, 2019, which is more than 10 days.

61.     On or about October 10, 2019, Special Agent Jude Maroney, a male Caucasian, notified Plaintiff that DI DiBella advised him not to communicate with Plaintiff.

62.     On or about October 30, 2019, GS Settles provided Plaintiff with Fiscal Year 2019 evaluation report in the presence of ASAC Zon. Specifically, GS Settles took the interim rating evaluation report, waived it in the air, and asked Plaintiff, "Do you remember this?", then handed the 2019 fiscal year evaluation report to the Plaintiff. GS Settles instructed Plaintiff to take some time to review the evaluation report at her desk, sign it and hand it back. Despite the praise and acknowledgement letter from the Saratoga Police Department, GS Settles' evaluation report critiqued Plaintiff's work performance, alleging in part that Plaintiff "needs to make efforts in communicating better with her teammates, state and local law enforcement counterparts, specifically with NADDIS and deconfliction with individuals within her group and other groups". Yet, GS Settles contradicted himself in the same evaluation report also noted in part that "DI Barnes has shown how to properly deconflict with various databases at her disposal. DI Barnes also demonstrated that she can effectives communicate with AUSAs" – Assistant US Attorneys. GS Settles also did not include the Saratoga Police Department's praise and acknowledgement letter into the Plaintiff's file, despite Plaintiff's verbal and written requests for it to be included.

63.     On or about November 2019, GS Settles verbally permitted Plaintiff to work on the doctor criminal case, that was still ongoing, and which Plaintiff intended to begin work on in April 2018.

64.     On or about December 27, 2019, GS Settles notified Plaintiff that the diversion secretaries are not present to scan the diversion documents, and "it's the responsibility of the DI". If time doesn't permit for DI to scan the documents, then the DI has to make a request. This was not a standard practice at the DEA, further creating a hostile work environment, and requiring the Plaintiff, a DI to complete the work that is assigned for a secretary. As part of being a team player, Plaintiff completed the required task.

65.     On or about January 6, 2020, Plaintiff missed a meeting held by GS Settles because she was working on writing reports at her work desk. GS Settles did not approach her regarding the meeting. After the meeting, GS Settles accused Plaintiff of having time management issues, further claiming that besides missing the meeting, Plaintiff was coming late to work every day (which was false). On the same day, GS Settles missed a meeting held by Plaintiff and the Division Counsel for the DEA. In other words, GS Settles disparately treated the Plaintiff by enforcing the rules against the Plaintiff, while not holding himself accountable to the same rules.

66.     Upon information and belief, on no occasions did GS Settles take action to address DI DiBella's lateness. On or about May 7, 2019, DI Sousa had a meeting scheduled with AUSA and DI DiBella. DI Sousa reported to GS Settles that DI DiBella missed the meeting, and GS Settles stated to DI Sousa "it is what it is" regarding her absence. On or about August 7, 2019, Plaintiff witnessed how DI DiBella arrived late to a meeting held by DI Callahan, which delayed the meeting start time. On or about June 25, 2019, DI DiBella arrived 15 minutes late to the Special Agent in Charge Raymond Donovan ("SAC Donovan") meeting which is a meeting conducted by

upper management. In other words, DI DiBella received preferential treatment and was not reprimanded for missing or coming late to meetings, unlike the Plaintiff, thereby encouraging DI DiBella to continue the same behavior.

67.     On or about January 9, 2020, upper management, Associate SAC Keith Kruskall, a male Caucasian, and ASAC Timothy Flaherty, a male Caucasian, conducted meetings with Plaintiff, and separately with GS Settles, DI DiBella, DI Christopher Gavin, a male Caucasian, and Tactical Diversion Squad Group Supervisor "TDS-GS" Terry Dunlap, a male Caucasian, regarding a report that GS Settles filed, complaining that on May 16, 2019, Plaintiff and DI Sousa did not cooperate with the inspection team. During the meeting, GS Settles failed to mention the fact that Plaintiff and DI Sousa were the only officers not paid overtime. (para. 41)

68.     On or about January 31, 2020, GS Settles conducted a Diversion Group Meeting with Assistant James Lavelle ("Lavelle"), a male Caucasian, DI DiBella and DI Russo. After Lavelle inquired reasons for DI DiBella and DI Russo missing the meeting, GS Settles ran to the other side of the building to get DI DiBella and DI Russo attend the meeting, which is contrary to his conduct when Plaintiff missed a meeting on January 6, 2020. (para. 61).

69.     On or about February 10, 2020, Plaintiff emailed an EEO specialist regarding her (Plaintiff's) promotion delay.

70.     On or about April 22, 2020, Plaintiff emailed GS Settles a draft report for his review under case number C7-20-2011.

71.     GS Settles accused Plaintiff on April 29, 2020, that she has an outstanding (overdue) case report that needs to be completed and provided an incorrect case number. Plaintiff notified GS Settles that the only outstanding case she had was the one that was sent to him for review to which he hasn't responded yet.

72.     On or about May 5, 2020, Plaintiff filed a complaint to the Office of Professional Responsibility ("OPR") against GS Settles and DI DiBella for bullying, retaliation and collusion between GS Settles and DI DiBella.

73.     On or about May 14, 2020, despite Plaintiff's complaint and being under investigation, DI DiBella received a promotion.

74.     On or about May 22, 2020, Plaintiff emailed GS Settles about her promotion status, and was notified that her promotion was disapproved by the OPR Integrity check.

75.     Plaintiff was subjected to continuous supervisory delays in regard to document reviews, but the imposed deadlines for her to submit documents and reports were not changed, causing her pressure at work and hostile work environment.

76.     On or about July 7, 2020, Plaintiff emailed to EEO, that DI Heneghan stated that there is a lot of pressure to work diversion criminal investigation cases, pursuant to SAC Donovan's orders from April 11, 2019 that he has high interest in diversion criminal investigation cases. As a result of SAC Donovan's orders, some DIs received permission from their GSs to work on the criminal investigations. On or about July 7, 2020, Plaintiff inquired about permission from GS Settles. On July 21, 2020, GS Settles sent an email to everyone requesting the submission of Temporary Duty Travel ("TDT") authorization requests to work on the criminal investigations. After Plaintiff reminded him that she has been waiting for his guidance relative to TDT, since July 7th via group email, only then GS Settles granted the permission, but in the group email, insinuated that the delay was due to the Plaintiff's tardiness.

77.     On or about July 22, 2020, the Albany Diversion Group included the Plaintiff in the case and required her to spend one full day scanning evidence documents to further the case

investigation, thereby requiring her to complete work that was instead often assigned to a secretary, not a DI. Plaintiff completed the given task as part of being a team-player.

78.     On or about July 23, 2020, GS Settles assigned Plaintiff another set of assignments, but would delay his supervisory review. As a result, a backlog of cases developed, yet instead of supervising the Plaintiff, GS Settles sent numerous emails to the Plaintiff asking for statutes on each case.

79.     On or about August 3, 2020, Plaintiff filed a complaint to EEO, notifying them of GS Settles' delays in his supervisory review as the reason for her inability to close cases, which GS Settles framed to be the result of Plaintiff's purported tardiness habit.

80.     On or about August 14, 2020, despite an open complaint Plaintiff had filed against DI DiBella, GS Settles ordered DI DiBella to be the Acting Group Supervisor, thereby becoming Plaintiff's immediate supervisor.

81.     On or about August 26, 2020, Plaintiff emailed GS Settles about her promotion status again.

82.     On or about September 2, 2020, GS Settles notified Plaintiff to submit her promotion packet, and that a complaint against Plaintiff was cleared.

83.     On or about September 13, 2020, Plaintiff was transferred to the DEA's New York branch and her promotion had to be effective from that day. Plaintiff notified Group Supervisor Jennifer Hum of the DEA New York branch about the promotion not being posted on the Plaintiff's paycheck.

84.     On or about December 14, 2020, Plaintiff's paycheck salary reflected the GS 11,05 promotion with some back pay for locality difference only but did not reflect pay grade raise of an 11,05, that should have been dated back September 13, 2020.

85.     Plaintiff's promotion for GS 12 has been delayed and became in effect only on October 23, 2021, however, Plaintiff's DEA Academy classmates who graduated with Plaintiff already received their GS12 promotions after serving 12 months, unlike the Plaintiff who receive it after serving 22 months.

86.     Plaintiff has received superb evaluation in 2021 Fiscal Year Report at the DEA New York branch and has always performed her duties and responsibilities at a high level and currently holds the title of DI.

87.     At present, Plaintiff is employed at the DEA New York branch located in Manhattan, New York and April 11, 2021, received an Individual Time-Off Award.

88.     As a result of receiving negative evaluations at the DEA Albany branch, Plaintiff's promotion date has been pushed forward, thereby permanently delaying her all-future promotions and receiving salary increases late.

## FIRST CAUSE OF ACTION
### (Discrimination on the basis of National Origin – Federal Claims pursuant to Title VII)

89.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-88 of this Complaint as though fully set forth in this paragraph of the Complaint.

90.     Plaintiff has been subjected to Defendants' disparate treatment on the basis of her national origin in violation of Title VII.

91.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

92.     As a result of Defendants discriminatory conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, diminution of pension benefits, and attorneys' fees.

93.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life.

## SECOND CAUSE OF ACTION
### (Discrimination on the basis of National Origin – New York State Claim under the Executive Law Against All Defendants)

94.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-93 of this Complaint as though fully set forth in this paragraph of the Complaint.

95.     Plaintiff has been subjected to Defendants' disparate treatment on the basis of her national origin in violation of The Executive Law of the State of New York.

96.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

97.     As a result of Defendants discriminatory conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, diminution of pension benefits, and attorneys' fees.

98.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life.

**THIRD CAUSE OF ACTION**
**(Discrimination on the basis of Gender – Federal Claims pursuant to Title VII)**

99.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-98 of this Complaint as though fully set forth in this paragraph of the Complaint.

100.     Plaintiff has been subjected to Defendants' disparate treatment on the basis of her gender in violation of Title VII.

101.     Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

102.     As a result of Defendants discriminatory conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, diminution of pension benefits, and attorneys' fees.

103.     As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life.

**FOURTH CAUSE OF ACTION**
**(Discrimination on the basis of Gender – New York State Claim under the Executive Law Against All Defendants)**

104. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-104 of this Complaint as though fully set forth in this paragraph of the Complaint.

105. Plaintiff has been subjected to Defendants' disparate treatment on the basis of her gender in violation of The Executive Law of the State of New York.

106. Furthermore, by reason of the continuous nature of Defendants' discriminatory and disparate treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

107. As a result of Defendants discriminatory conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, diminution of pension benefits, and attorneys' fees.

108. As a result of Defendants' discriminatory conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life.

## FIFTH CAUSE OF ACTION
### (Hostile Work Environment- Federal Claim)

109.     Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-88 of this Complaint as though fully set forth in this paragraph of the Complaint.

110.     Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize her within the DEA.

111.     Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all

violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

112.    As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, a decreased pension, and attorneys' fees.

113.    As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

## FOURTH CAUSE OF ACTION
### (Hostile Work Environment- New York State Claim against All Defendants)

114.    Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-113 of this Complaint as though fully set forth in this paragraph of the Complaint.

115.    Defendants created a hostile work environment for Plaintiff, when they created an objectively abusive work environment for Plaintiff, which altered the conditions of Plaintiff's employment, in an attempt to marginalize her within the DEA, in violation of New York State Human Rights Law; Executive Law §296(1)(a).

116.    Furthermore, by reason of the continuous nature of Defendants' hostile and discriminatory treatment of Plaintiff, which persisted throughout the relevant periods mentioned hereinabove, Plaintiff is entitled to the application of the continuing violations doctrine to all violations alleged herein as the actions of Defendants continue to have an adverse and prejudicial impact on Plaintiff.

117.     As a result of Defendants harassing conduct, Plaintiff has incurred, and will continue to incur, damages thereby, but not limited to back pay, forward pay, a decreased pension, and attorneys' fees.

118.     As a result of Defendants' harassing conduct, Plaintiff has suffered and will continue to suffer mental anguish, emotional distress, and loss of enjoyment of life; and has incurred and will incur damages thereby.

**FIFTH CAUSE OF ACTION**
**(Retaliation - New York State Claim under the Executive Law Against All Defendants)**

119. Plaintiff hereby repeats, re-alleges, and incorporates each and every allegation contained by reference herein paragraphs 1-118 of this Complaint as though fully set forth in this paragraph of the Complaint.

120.     Plaintiff was subjected to retaliation in that he was given numerous transfers and as a result of his participation in a protected activity.

121.     As a result of the Defendants' discriminatory and retaliatory conduct, Plaintiff has incurred and will continue to incur damages, including but not limited to lost income, reduced pension benefits, and legal fees.

122.     As a result of Defendants' discriminatory and retaliatory conduct, Plaintiff has suffered and will continue to suffer emotional distress and loss of quality of life.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants, jointly and severally, awarding Plaintiff compensation and other damages in the form of back pay, front pay, and other monies and benefits unlawfully denied to Plaintiff, as well as for emotional distress, permanent damages to Plaintiff's emotional/mental well-being, loss of enjoyment of life, including pain and suffering, shame and humiliation.

1.      On the First Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

2.      On the Second Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

3.      On the Third Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

4.      On the Fourth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

5.      On the Fifth Cause of Action, judgment against Defendants for compensatory damages and attorneys' fees, in an exact amount to be determined at trial; and

That Plaintiff have such other, further, and different relief as the Court deem just, proper, and equitable in the circumstances, together with interest on all Causes of Action, attorney's fees, and costs and disbursements in this action.

Dated: New York, New York
      January 7, 2022

                                 BALLON STOLL P.C.

                                 By:____*s/Marshall Bellovin*_____
                                      Marshall B. Bellovin, Esq. (MB5508)
                                      *Attorneys for Plaintiff*
                                      810 Seventh Avenue
                                      Suite 405
                                      New York, New York, 10019
                                      212-575-7900